**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **FILIZ SHINE EDIZER,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:11-CV-799** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **MUSKINGUM UNIVERSITY,** | : | **Magistrate Judge Terence Kemp** |
| | : | |
| **Defendant.** | : | |
| | : | |

## <u>OPINION AND ORDER</u>

### I. INTRODUCTION

This matter is before the Court on a motion to dismiss for lack of subject matter jurisdiction[1] by Defendant Muskingum University ("Defendant" or "Muskingum"), (Doc. 13), and a motion to dismiss Defendant's counterclaims and to strike affirmative defenses by Plaintiff Filiz Shine Edizer ("Plaintiff" or "Edizer"), (Doc. 7).  For the following reasons Defendant's motion to dismiss for lack of subject matter jurisdiction is **DENIED**, and Plaintiff's motion to dismiss counterclaims and to strike affirmative defenses is **GRANTED** in part and **DENIED** in part.

### II. BACKGROUND

#### A. Factual History

Edizer was employed by Muskingum beginning in August 2003 as a tenure-track

---

[1] Defendant purports to move to dismiss Plaintiff's complaint pursuant to both Federal Rule of Civil Procedure 12(b)(1) & (6), but Defendant's sole argument is that this Court does not have subject matter jurisdiction over Plaintiff's complaint because she did not exhaust her administrative remedies.  This Court will construe Defendant's motion to dismiss as one to dismiss for lack of subject matter jurisdiction.

education professor.  She alleges in her complaint that she was terminated based on her caregiving responsibilities to her son, who is disabled, her three other children, and her elderly mother, and that her termination amounts to unlawful sex discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and violations of Chapter 4112 of the Ohio Revised Code.

Prior to beginning employment at Muskingum, Edizer informed the Chair of the Education Department that she needed a class schedule of Mondays, Wednesdays, and Fridays to accommodate her caregiving responsibilities.  According to Edizer, Muskingum agreed to this on-campus teaching schedule, and Edizer would not have accepted the position at Muskingum had it not.  Edizer alleges that she received annual performance evaluations conducted by the Chair of the Education Department throughout her employment at Muskingum, and those evaluations were positive.

In 2008, Edizer began the process of requesting tenure and a promotion at Muskingum. Pursuant to Muskingum's policies and procedures, she submitted her portfolio for review to the Vice President of Academic Affairs, who allegedly informed Edizer that the portfolio looked great.  Both the current and former Chairs of the Education Department, as well as Edizer's Division Coordinator, recommended granting Edizer's application for tenure.

Under Muskingum's policies, the Faculty Affairs Committee ("FAC"), comprised of eight tenured professors, is responsible for reviewing a candidate's tenure application and qualifications and submitting a recommendation to the Vice President of Academic Affairs. Considering this recommendation, the Vice President of Academic Affairs is then to form his or her own recommendation, which he or she passes along to the President.  The President forms his or her own recommendation, and passes it along to the Board of Trustees to make the final

2

decision regarding a candidate's tenure application.

Edizer alleges that the FAC did not perform a thorough review of her candidacy.  Two members of the FAC, Dr. Richard Williamson and Dr. Stephen Van Horn, were placed in charge of interviewing students about Edizer and reporting back to the FAC.  According to Edizer, Van Horn failed to attend all of the student interviews, and Williamson failed to attend the FAC meeting where Edizer was interviewed.

The FAC knew of Edizer's caregiving responsibilities and about her Mondays, Wednesdays, and Fridays teaching schedule.  When considering Edizer's application, the Chair of the FAC made the following note: "has M-W-F load – single mother.  Has had health issues." (Compl. ¶ 35.)

The FAC ultimately decided not to recommend Edizer for tenure and promotion, and in a report as to the reasons against recommending her for tenure, the FAC indicated its decision was based in part on her teaching schedule.  The Vice President of Academic Affairs, President, and Board of Trustees concurred with the FAC's opinion not to recommend Edizer for tenure.  On April 22, 2009, Edizer received a letter from Muskingum that she would not receive tenure or a new contact for the 2010–11 school year.

Muskingum alleges different and additional facts in support of its counterclaims.  First, Muskingum alleges that, although Department Chairs have the initial prerogative of scheduling a faculty member's classroom schedule, only its President has the ability contractually to bind the university to a specific teaching schedule.  Full-time faculty who are not scheduled to teach classes on certain days are required to use non-class days "for their mandated scholarly activity pursuits."  (Answer ¶ 73.)

Pursuant to Edizer's employment contract, she was subject to "the privileges,

responsibilities and other relevant provisions of the <u>Faculty Handbook</u>."  (*Id.* ¶ 67) (emphasis in original).  One such responsibility was for full-time faculty members to "give primary attention to their professional duties as understood by the University."  (*Id.* ¶ 69.)  "Intent by a full-time faculty member to accept or continue any off-campus teaching or non-teaching employment during the term of service of the academic year . . . must be discussed in advance with and approved by the [Vice President of Academic Affairs] in writing."  (*Id.*)

According to Muskingum, Edizer communicated to Caroline Clark of the Ohio State University ("OSU") that she was "considering [an OSU] position" and "for now [was] available Tuesday and Wednesday evenings."  (*Id.* ¶ 76.)  Clark responded by suggesting that Edizer teach a "Teaching and Learning" course at the OSU College of Education School.  (*Id.*)  Edizer accepted the position on September 18, 2003, without discussion or approval from Muskingum, and continued teaching the course through the Spring of 2010.  (*Id.* ¶¶ 77–80.)  Edizer was compensated by OSU for teaching the course.  Muskingum also alleges that during the 2004–05 academic year, Edizer was appointed as a visiting professor at OSU and taught nine courses.

Muskingum alleges facts related to a grievance Edizer filed with its Professional Relations Committee ("PRC") after she was denied tenure.  Edizer argued in front of the PRC that Muskingum had discriminated against her on the basis of her sex and violated her rights under the ADA.  The PRC conducted a three-day formal hearings where Edizer and her counsel had the opportunity to present exhibits, call witnesses, cross-examine Muskingum's witnesses, and make closing arguments.  The PRC ultimately concluded there was no evidence of sex or ADA discrimination.

Edizer filed a charge of discrimination with the EEOC thereafter, discussed further *infra* Part III.B.1.  The EEOC issued a Notice of Right to Sue.

4

*B. Procedural History*

Edizer filed a complaint against Muskingum on September 2, 2011, alleging violations of Title VII, the ADA, and Chapter 4112 of the Ohio Revised Code.  Muskingum filed an answer with affirmative defenses and counterclaims.  Muskingum alleges a number of purported affirmative defenses, of which Edizer moves to strike the following: (1) disloyal/faithless servant doctrine (third defense); (2) breach of Edizer's employment contract with Muskingum (fourth defense); (3) a bar from recovery of damages any time period beyond September 30, 2010, "which was the time when Muskingum discovered her unauthorized, during-term employment at another institution" (fifth defense); (4) "faithless/disloyal servant, unclean hands, fraud, and/or constructive fraud" (sixth defense); (5) estoppel (seventh defense); and (6) "[n]one of Plaintiff's mother, daughter or son constitute [sic] individuals with disabilities" under the ADA (ninth defense.  (Doc. 5, 7.)  Muskingum also brings counterclaims for: (1) breach of duty of loyalty/faithless servant (count 1); (2) breach of contract (count 2); (3) "vexatious/frivolous litigation – federal" (count 3); and (4) "frivolous litigation – state" (count 4).  (Doc. 5.)

After Edizer's motion to dismiss counterclaims and to strike affirmative defenses was filed, (Doc. 7), Muskingum filed a motion to dismiss for lack of subject matter jurisdiction, (Doc. 13).  Both motions are now ripe for review.  This Court will address Muskingum's motion first because subject matter jurisdiction is a threshold matter.

## III. DEFENDANT'S MOTION FOR LACK OF SUBJECT MATTER JURISDICTION

*A. Standard of Review*

The burden of proving jurisdiction is on the plaintiff when subject matter jurisdiction is challenged pursuant to Federal Rule Civil Procedure 12(b)(1).  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d

913, 915 (6th Cir. 1986)).  Federal Rule Civil Procedure 12(b)(1) motions to dismiss based upon subject matter jurisdiction "generally come in two varieties: (1) a facial attack on subject matter jurisdiction; and (2) a factual attack on subject matter jurisdiction."  *Moore v. Pielech*, Case No. 2:10-cv-00453, 2011 U.S. Dist. LEXIS 97098, at *4 (S.D. Ohio Aug. 30, 2011) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

Facial attacks on subject matter jurisdiction "merely question the sufficiency of the pleading."  *Ohio Nat'l Life*, 922 F.2d at 325.  A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss.  *Id.*  In a factual attack on subject matter jurisdiction a court "must . . . weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist."  *Id.*

Muskingum has made a factual attack on subject matter jurisdiction.  This Court, therefore, may consider evidence outside of the pleading to resolve this factual dispute concerning jurisdiction.  *Rogers*, 798 F.2d at 916.

### B. Law and Analysis

Muskingum argues that Edizer's complaint must be dismissed for lack of subject matter jurisdiction because she has failed to exhaust her administrative remedies with respect to her Title VII and ADA association claims.  Defendant argues that this Court should decline to exercise plenary jurisdiction over Edizer's state law claims when it dismisses Edizer's federal law claims.  Edizer relies on *Nichols v. Muskingum College* to reply that this Court should reject Muskingum's timeliness argument.  318 F.3d 674 (6th Cir. 2003).

A plaintiff must typically file a timely discrimination charge with the EEOC prior to bringing a Title VII lawsuit.  *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999), *cert.*

*denied,* 528 U.S. 1154 (2000).  The applicable statute of limitations begins to run from the date of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  A charge is timely when the aggrieved filed with the EEOC within 180 days after the alleged unlawful practice occurred.  *Id.*  An exception exists for charges instituted with a state agency:

> [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

*Id.*  This exception applies in Ohio.

In *Nichols*, the plaintiff, like Edizer, was a professor at Muskingum who received notification that her contract would not be renewed for the academic year.  318 F.3d at 676.  Two hundred and ninety-five days after the plaintiff received notice of her non-renewal, she went to the Ohio Civil Rights Commission ("OCRC") and spoke with an intake officer.  *Id.*  She claimed that she was not re-hired because she failed to conform to the university's accepted stereotype of female faculty.  *Id.*  The OCRC officer asked the plaintiff a number of questions about her complaint and assisted her in completing a charge.  *Id.*  The plaintiff handwrote the charge on OCRC stationary, signed it, and checked a box next to the signature line labeled "I also want this charge to be filed with the EEOC."  *Id.*  The charge was forwarded to the EEOC, but not referred to the OCRC itself for state filing.  *Id.*

Muskingum argued that no charge was filed with the OCRC, the 300-day limitations period was inapplicable, and the plaintiff's charge was therefore untimely.  *Id.*  The district court

ultimately agreed with Muskingum on a motion to reconsider, and the Sixth Circuit reversed.  *Id.*
at 677, 687.

The Sixth Circuit framed the issue before it as follows: "whether [42 U.S.C. § 2000e-
5(e)(1)'s exception] provision is properly understood to provide that an individual who has
presented her written and signed charge to the state agency has 'initially instituted proceedings'
with that agency, regardless of whether the state agency takes further action on the claim," and
answered this question in the affirmative.  *Id.* at 678.  The *Nichols* court noted that it was
presented with the bizarre situation where a state commission failed to refer a charge to itself for
purposes of state filing.  *Id.*  Nevertheless, the Circuit found that it is "well settled law that if the
EEOC fails to refer a charge to the state charging agency, the EEOC's misfeasance is not held
against the plaintiff."  *Id.* (internal string citations omitted).  The Circuit cited persuasive
reasoning from the Ninth Circuit in reaching its conclusion:

> Prohibiting *any* remedy to claimants who file discrimination complaints with an
> appropriate state or federal agency within the 300-day deadline is entirely at odds
> with the purpose of the worksharing agreement . . . and with Title VII. . . . In
> enacting Title VII, Congress . . . intended the statute's procedural requirements to
> be liberally construed in order to remedy gender-based discrimination in the
> workplace and to preserve a claimant's federal remedies in discrimination suits.

*Id.* at 679 (quoting *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1177 (9th Cir.)
(citations omitted)).

The *Nichols* court made two additional points that are of importance in this case.  First,
relying the Supreme Court's decision in *Love v. Pullman Co.*, the court explained that, "[t]he
imposition of strict procedural technicalities 'are particularly inappropriate in a statutory scheme
in which laymen, unassisted by trained lawyers, initiate the process.'"  *Id.* at 681 (citing 404 U.S.
522, 525 n.4 (1972)).  The *Nichols* court held that it was of no moment whether the plaintiff had

been represented by an attorney at the time she filed her charge with the OCRC.  *Id.* at 681 n.2

(citing *Heiniger v. City of Phoenix*, 625 F.2d 842, 845 (9th Cir. 1980)).  Second, the court found

that the district court had relied incorrectly on the fact that the plaintiff's charge included the

words "EEOC only" to conclude that the plaintiff did not file a proceeding with the state agency.

*Id.* at 681.

Although the facts in this case vary slightly, this Court is persuaded that the reasoning in

*Nichols* clearly applies.  Edizer's EEOC charge indicates that the "date the discrimination took

place" was April 20, 2009.  (Doc. 13-1.)  She executed her charge in front of a notary on

February 1, 2010, which is 287 days after the alleged wrongful conduct.  (*Id.*)  According to the

EEOC's Charge Transmittal form, the EEOC received Plaintiff's charge on February 2, 2010,

and sent the charge to the OCRC on February 5, 2010.  February 5, 2010 is 291 days after the

alleged wrongful conduct.  The EEOC's Charge Transmittal form is stamped that the "Ohio Civil

Rights Commission Compliance Department" received it on February 16, 2010, which is 302

days after the alleged wrongful conduct.  (*Id.*)  The OCRC's Director of Enforcement and

Compliance checked the box stating: "This will acknowledge receipt of the  reference charge and

indicate this Agency's intention not to initially investigate the charge."  (*Id.*)  Finally, the form

was received back at the EEOC on February 18, 2010, without the "FEPA [Fair Employment

Practice Agency][2] waive" box checked.  (*Id.*)

Muskingum makes a number of arguments—all extremely technical in nature—as to why

Edizer's charge was untimely.  The Court finds these arguments unpersuasive.  Muskingum's

main argument is that the OCRC did not receive Edizer's charge until February 16, 2010, which

---

[2] The EEOC refers to state and local agencies that have their own laws prohibiting discrimination as FEPAs.

was 302 days after the alleged wrongful conduct.  That is simply the date, however, that the "Ohio Civil Rights Commission Compliance Department" stamped that it received the charge. This Court would also have to believe, if it adopted Muskingum's argument that it took 11 days for the charge to get from the EEOC to the OCRC.  Even if it did take that long for the charge to get from one commission to the next, this Court will not construe this fact against the Plaintiff. *Id*. (explaining that it is "well settled law that if the EEOC fails to refer a charge to the state charging agency, the EEOC's misfeasance is not held against the plaintiff").  Nor will it construe the fact that the "FEPA waive" box was unchecked when the EEOC received the charge back from the OCRC against the Plaintiff.  The OCRC clearly acknowledged receipt of Edizer's charge and indicated its intention not to investigate.  Edizer filed a charge with the EEOC and that charge was sent to the OCRC before the 300 day deadline.  As explained above, "[p]rohibiting *any* remedy to claimants who file discrimination complaints with an appropriate state or federal agency within the 300-day deadline is entirely at odds with the purpose of the worksharing agreement."  *Nichols*, 318 F.3d at 679.  Furthermore, the Sixth Circuit has demonstrated a strong preference to allow suits by individuals complaining of discrimination who have diligently tried to satisfy the EEOC's procedural requirement, even if they are not entirely successful.  *See, e.g.*, *Mitchell v. Mid-Continent Spring Co.*, 466 F.2d 24, 27 (6th Cir. 1972) ("It is clear that [plaintiff] should not lose her cause of action because of the failure of the EEOC to refer her complaint to the state agency.").

Muskingum also focuses on the fact that Plaintiff's charge was labeled "Equal Employment Opportunity Commission Only" and that Plaintiff was represented by her attorney when she filed her charge.  The *Nichols* court, however, already found both of these facts unpersuasive reasons to conclude that a plaintiff's charge was untimely filed.  318 F.3d at 681.

10

Citing Federal Rule Civil Procedure 11, Muskingum posits that Plaintiff's allegation in her complaint that her EEOC charge was filed within 180 days of the unlawful practice is made without reasonable inquiry.  (Compl. ¶ 5.)  The Court suspects this was merely an error in draftsmanship because Plaintiff attaches her EEOC charge to her filings and never argues that her charged was filed within the 180 day-deadline.  (Doc. 15.)  Given that Defendant has made multiple pleading errors itself, detailed *supra* Part V, this Court will not construe this mistake in drafting against Plaintiff.

With respect to Plaintiff's ADA association claim, Muskingum contends that even if this Court finds Edizer's charge was timely filed with the OCRC, such filing does not extend Plaintiff's time limit to file with the EEOC to 300 days because Ohio Revised Code § 4112.02, unlike the ADA, does not recognize a claim for associational discrimination.  Therefore, Defendant contends, since Plaintiff did not file a valid charge under Ohio law, she is not entitled to benefit from the resulting extension of time to file with the EEOC.

Simply, Defendant either misunderstands or misstates the law regarding associational discrimination under Ohio Revised Code § 4112.02.  While the Sixth Circuit has said in dicta that Ohio Revised Code § 4112.02 does not recognize a claim for associational discrimination, *see Smith v. Hinkle Manufacturing Inc.*, 36 F. App'x 825, 831 (6th Cir. 2002), Ohio courts confronting the issue directly have held to the contrary.  In *Cole v. Seafare Enterprises Ltd., Inc.*, an Ohio court held that "a proscription against discrimination based on association must be applied to 4112.02(A)."  No. C-950157, 1996 WL 60970, at *2 (Ohio Ct. App. Feb. 14, 1996).  Since the dicta in *Smith* was not essential to the Court's holding, and since the statute in question is an Ohio statute, this Court has followed the Ohio courts in finding "that Ohio law does permit a claim of associational discrimination."  *Berry v. Frank's Auto Body Carstar, Inc.*, 817 F.Supp.

11

2d 1037, 1047 (S.D. Ohio 2011) *aff'd,* No. 11–4150, 2012 WL 3553505 (6th Cir. Aug. 20, 2012)

(citing *Mawell v. City of Columbus*, No. 2:08–cv–264, 2011 WL 2493525 (S.D. Ohio June 21,

2011)).

A summary of the case law, demonstrates that Ohio does recognize a claim of

associational discrimination under Ohio Revised Code § 4112.02.  The charge Edizer filed with

the state is valid, and she is able to benefit from the 300-day time limit to file her EEOC claim

for ADA association discrimination with the EEOC.

Defendant's motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

## IV. PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

### A. Standard of Review

Federal Rule Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a).  Although a non-moving party need not plead specific facts, the complaint

must "give the defendant fair notice of what the claim is, and the grounds upon which it rests."

*Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89,

93 (2007)).

The non-moving part's ground for relief must entail more than "labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007).  The non-moving party has satisfied Rule 12(b)(6) if he or

she pled enough facts "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

556 U.S. 662, 663 (2009). Additionally, the Court must accept as true allegations of fact, and the

complaint must be construed in the light most favorable to the non-moving party.  *Davis H. Elliot Co. v. Caribbean Util. Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975).[3]

### B. Law and Analysis

### 1. Breach of Duty of Loyalty/Faithless Servant

Edizer argues Muskingum's claim for breach of duty of loyalty/faithless servant should be dismissed because the university does not allege facts indicating dishonesty or disloyalty that permeated Edizer's employment relationship with Muskingum or that damaged Muskingum. Edizer contends that "[i]t is not plausible that Dr. Edizer's moonlighting at Ohio State constituted disloyalty 'permeating' her employment at Muskingum when her own Department Chair and her own Division Coordinator judged her to be worthy of tenure based on their knowledge of Dr. Edizer's job performance at Muskingum."  (Doc. 7 at 6.)  Muskingum argues that it has alleged sufficient to withstand Edizer's motion to dismiss facts to state a claim for breach of duty of loyalty/faithless servant.

In Ohio, courts have adopted the "faithless servant doctrine" which provides the following:

> [D]ishonesty and disloyalty on the part of an employee which permeates his service to his employer will deprive him of his *entire agreed compensation,* due to the failure of such an employee to give the stipulated consideration for the agreed compensation.  Further, as public policy mandates, an employee cannot be

---

[3] Defendant filed a motion for leave to file supplemental authority in support of its memorandum in opposition on July 9, 2012, asking this Court to consider *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012).  In *Keys*, the Sixth Circuit held that the *McDonnell Douglas* burden-shifting framework required to plead a prima facie case of race discrimination does not apply at the pleading stage.  *Id.* at 606 (citing 411 U.S. 792 (1973)).  Muskingum does not bring any race discrimination counterclaims, making the reasoning and holding in *Keys* irrelevant in this case. Defendant's motion for leave to file is **DENIED.**

> compensated for his own deceit or wrongdoing.  However, an employee's
> compensation will be denied only during his period of faithlessness.

*Foley v. Am. Elec. Power*, 425 F. Supp. 2d 863, 863 (S.D. Ohio 2006) (emphasis in original)

(citing *Roberto v. Brown Cnty. General Hosp.*, 571 N.E.2d 467, 469 (Ohio Ct. App. 1989)).  For

example, the *Roberto* court held that under this doctrine, an employer was entitled to withhold

deferred compensation where a hospital administrator had embezzled money from the hospital.

571 N.E.2d at 469.

Muskingum has alleged Edizer was dishonest and disloyal because she breached the

responsibilities she agreed to abide by in her employment contract.  One such responsibility,

outlined in the Faculty Handbook, was discussing any off-campus teaching employment with the

Vice President of Academic Affairs at Muskingum prior to accepting any positions.  Muskingum

argues that Edizer, without its knowledge, taught at OSU from the fall of 2003 until the spring of

2010.  These allegations are sufficient to allege dishonesty and disloyalty on the part Edizer that

permeated through her service to her employer, Muskingum.  In fact, Muskingum has alleged

that Edizer was violating the responsibilities under her employment contact nearly the entire time

she was employed by the university.

Muskingum also alleges that, through her dishonesty and disloyalty, Edizer "deprived it

of the full-time teaching services she had represented she would perform and for which

Muskingum had bargained."  (Answer ¶ 87.)  Muskingum has adequately alleged it was damaged

by Edizer's dishonesty and disloyalty.

Edizer's reliance on *Kamlani v. A.C. Leadbetter & Son, Inc.*, is unpersuasive.  No. L-05-

1277, 2006 Ohio App. LEXIS 1951 (Ohio Ct. App. Apr. 28, 2006).  The *Kamlani* case dealt with

a faithless servant claim at the summary judgment stage, and the employer was supporting its

14

claim with only five emails, one of which was neither authored nor addressed to the plaintiff.  *Id.*
at *14–15.  Furthermore, this Court finds unconvincing her contention that it is not plausible that
her employment at OSU constituted disloyalty permeating her employment at Muskingum
because her Department Chairs recommended her for tenure.  Muskingum has alleged it did not
know about Edizer's work at OSU.

Edizer's motion to dismiss with respect to Muskingum's first counterclaim is **DENIED**.

### 2. Breach of Contract

Muskingum brings a breach of contract counterclaim against Edizer.  She argues that she
has substantially performed her obligations under her employment contract, and that because the
responsibilities regarding off-campus teaching are not explicitly stated in her contract, but only
incorporated by reference, such responsibilities were not actual conditions of her employment.
Implied in her argument is that she did not breach her employment contract.  Finally, she argues
that, as a result of this mere reference to responsibilities, even if she did breach the contract, her
breach was not material.

Muskingum counters that the requirement that faculty members comply with
responsibilities listed in the Faculty Handbook is clearly expressed in Edizer's employment
contract.  Muskingum also analyzes caselaw related to whether a breach is material, but it is
unclear to this Court whether Muskingum's final position is that the breach was material.  The
university nevertheless concludes by stating that at this point, in this litigation, there is
insufficient evidence to determine if Edizer's breach is material.

A breach of contract claim under Ohio law has four elements: (1) the existence of a
contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) damages.  *Pavlovick
v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law).  Edizer is only

challenges only the third element of Muskingum's breach of contract claim. Muskingum has alleged that Edizer's employment contract states that "the terms of employment include privileges, responsibilities, and other relevant provisions of the Faculty Handbook." (Answer ¶ 67.) The Faculty Handbook states that Edizer must obtain approval prior to teaching off-campus. Muskingum alleges Edizer taught off-campus at OSU, but without obtaining approval first. This Court finds Muskingum has sufficiently alleged Edizer breached her employment contract.

Substantial compliance is a doctrine a party uses in order to recover upon a contract it did not fully perform to the letter. *See Interstate Gas Supply Inc. v. Calex Corp.*, No. 04AP-980, 2006 Ohio App. LEXIS 575, at *23–24 (Ohio Ct. App. Feb. 14, 2006) ("The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract."); *Hansel v. Creative Concrete & Masonry Constr. Co.*, 772 N.E.2d 138, 141 (Ohio Ct. App. 2002) ("In general, substantial compliance will support a recovery of the contract price less allowance for defects in performance or damages for failure to strictly comply with the contract"). It is a doctrine that requires weighing of the evidence, which this Court does not do at the motion to dismiss stage. Similarly, whether a breach of a contract constitutes a material breach is a question of fact that would be improperly considered at the motion to dismiss stage. *O'Brien v. Ohio State Univ.*, No. 06AP-946, 2007 WL 2729077, at *27 (Ohio Ct. App. 2007) (citations omitted) ("Ohio courts have held that the question whether a breach is material is primarily a question of fact"). This Court's only task at this stage in the litigation is to determine whether Muskingum's counterclaim for breach of contract contains sufficient allegation to withstand Edizer's motion to dismiss. This Court finds that Muskingum's

16

counterclaim has been adequately alleged, and Edizer's motion to dismiss Muskingum's breach of contract claim is **DENIED**.

3. Vexatious/Frivolous Litigation—Federal

In its third counterclaim, Muskingum argues that Plaintiff's Title VII/ADA action is "in an effort to harass and/or maliciously injure Muskingum, solely for the purpose of extorting money from it."  (Answer ¶ 111.)  Edizer argues Muskingum has not pled sufficient facts to support its frivolous litigation claim under *Twombly/Iqbal*.  Muskingum counters that it has done so in two major respects: (1) it has alleged "Plaintiff did *not* file a timely EEOC charge and she knows it"; and (2) Edizer's lawsuit lacks foundation because the PRC found she had not evidence to support her claims.

42 U.S.C. § 2000e-5 states that "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee (including expert fees) as part of the costs."  "[T]he standard for awarding fees to a prevailing employer is more stringent than that for awarding fees to a prevailing employee."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417–18 (1978).  An employer may be awarded fees only if the plaintiff's claim is found to be "frivolous, unreasonable, or without foundation," or where the plaintiff continued to litigate after it became clear that his claim was frivolous, unreasonable, or without foundation.  *Id.*  A court should consider the following factors when making its determination: (1) whether plaintiff presented evidence to establish a prima facie case; (2) whether defendant offered to settle the case; and (3) whether the matter proceeded to trial or was determined through motion practice.  *Balmer v. HCA, Inc.,* 423 F.3d 606, 616 (6th Cir. 2005), *abrogated in part by Fox v. Vice*, 131 S. Ct 2205, 2212–13 (2011).

It is too early in this litigation to determine whether Plaintiff's lawsuit is frivolous in nature.  As explained above, a court must evaluate a plaintiff's evidence and conduct throughout the litigation to determine whether the litigation is frivolous. A court's determination is made after the party bringing the frivolous litigation claims has prevailed.  *See* 42 U.S.C. § 2000e-5. Thus, Edizer's motion to dismiss counterclaim three is **GRANTED**, but Muskingum's third counterclaim is **DISMISSED** without prejudice.

### 4. Frivolous Litigation—State

Edizer urges this Court to dismiss Muskingum's fourth counterclaim for the same reasons she urges the third should be dismissed.  Under Ohio law, frivolous conduct is defined as follows:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

Ohio Rev. Code § 2323.51.  On a 12(b)(6) motion, this Court's job is not to evaluate the evidence on the record.  For the same reasons articulated *supra* Part IV.B.3, Edizer's motion to dismiss counterclaim four is **GRANTED** and counterclaim four is **DISMISSED** without prejudice.

18

## V. PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES

As explained *supra*, Edizer moves to dismiss the following "affirmative defenses" pled by Muskingum: (1) disloyal/faithless servant doctrine (third defense); (2) breach of Edizer's employment contract with Muskingum (fourth defense); (3) a bar from recovery of damages any time period beyond September 30, 2010, "which was the time when Muskingum discovered her unauthorized, during-term employment at another institution" (fifth defense); (4) "faithless/disloyal servant, unclean hands, fraud, and/or constructive fraud" (sixth defense); (5) estoppel (seventh defense); and (6) "[n]one of Plaintiff's mother, daughter or son constitute [sic] individuals with disabilities" under the ADA (ninth defense.  (Doc. 7.)  The parties disagree about whether the *Iqbal/Twombly* standard all applies to answers.

Federal Rule of Civil Procedure 8(c)(2) provides:

> If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

Muskingum's third, fourth, and sixth "affirmative defenses" are simply recitations of its counterclaims that this Court has already addressed.  While Muskingum pleads its sixth defense using slightly different verbiage than in its third defense, both defenses are pleading Muskingum's faithless servant counterclaim again.  Pursuant to Federal Rule Civil Procedure 8(c)(2), these affirmative defenses are **STRICKEN** because this Court will construe them as counterclaims.

Muskingum's fifth "affirmative defense" appears to be an argument related to damages in this case, and is improperly pled as an affirmative defense in this case.  Muskingum's fifth affirmative defense is, therefore, **STRICKEN**.

A court in this district has explained that while courts are divided as to whether *Iqbal* and *Twombly* apply to all pleadings, including defenses contained in answers, or only to complaint, it agreed with the reasoning of courts applying the *Iqbal/Twombly* pleading standard to defenses. *Nixson v. Health Alliance*, No. 1:10–CV–00338, 2010 WL 5230867, at *1–2 (S.D. Ohio Dec. 16, 2010). "In both claims and defenses, the purpose of pleading requirements is to provide sufficient notice to the other side that some plausible, factual basis exists for the assertion," and the *Nixson* court could "find no reason why claims must be plausible but defenses, if not held to the *Iqbal/Twombly* standard, could have a mere suggestion of possibility of applicability to the case." *Id.* at *2. This Court agrees with this reasoning.

Muskingum's seventh "affirmative defense" is pled as follows: "Plaintiff is estopped by her own conduct from pursuing her purported claims against Muskingum." (Answer ¶ 63.) Thus, while estoppel is an affirmative defense under Federal Rule of Civil Procedure 8(c)(1), Muskingum provides no reasoning as to why Edizer should be estopped. Consequently, this defense must also be **STRICKEN** because Muskingum has presented no plausible factual basis for its claim.

Finally, Muskingum's ninth "affirmative defense" states: "None of Plaintiff's mother, daughter or son constitute [sic] individuals with disabilities" under the ADA. (Answer ¶ 65.) If Muskingum believes there is a dispute of material fact regarding whether any of Edizer's family members are disabled, this issue would be properly raised at the summary judgment stage with evidence supporting Muskingum's position. This ninth defense is **STRICKEN** because it is not properly pled.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction is **DENIED**, and Plaintiff's motion to dismiss counterclaims and to strike affirmative defenses is **GRANTED** in part and **DENIED** in part.  Specifically, Plaintiff's motion to dismiss is **DENIED** with respect to counterclaims one and two and **GRANTED** with respect to counterclaims three and four, which are **DISMISSED** without prejudice.  Defendant's affirmative defenses three, four, five, six, seven, and nine are **STRICKEN**.

**IT IS SO ORDERED.**

  **s/ Algenon L. Marbley**
**Algenon L. Marbley**
**United States District Judge**

**Dated: September 28, 2012**